## UNITED STATES of America

v.

## James MORIARTY, Defendant.

## Criminal Action No. 96–30055–FHF.

United States District Court,
D. Massachusetts.

May 7, 1997.

Douglas R. Peterson, East Longmeadow, MA, Mark G. Mastroianni, Springfield, MA, for Defendant.

Kevin O'Regan, U.S. Attorney's Office, Springfield, MA, for U.S.

FREEDMAN, Senior District Judge.

No objections having been filed, the Magistrate Judge's report and recommendations are hereby accepted. The motion to dismiss Count II is allowed. So ordered.

*REPORT AND RECOMMENDATION RE-GARDING DEFENDANT'S MO-TIONS FOR DISMISSAL AND CON-SOLIDATION RELEVANT TO COUNT TWO (WIRETAP) AND THREE (VOICEMAIL) (Docket No. 15 )*

April 3, 1997

NEIMAN, United States Magistrate Judge.

Pursuant to Fed.R.Crim.P. 12(b)(2) and 7(c) and the Double Jeopardy Clause of the Fifth Amendment, Defendant James M. Moriarty ("Defendant") seeks to dismiss Count II of the indictment, which charges him with illegal wiretapping in violation of 18 U.S.C. § 2511(1)(a), and thereby consolidate it with Count III, which charges him with unlawful access to voice mail in violation of 18 U.S.C. § 2701. Defendant's motion has been re-

ferred to this Court for a report and recommendation pursuant to Rule 3 of the Rules of United States Magistrates in the United District Court for the District of Massachusetts. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends that Defendant's motion be allowed.

## DISCUSSION

Defendant argues in the motion that, together, Counts II and III are multiplicitous, that is, they charge him twice with a single offense.[1] In response, the Government asserts that the motion should be denied because the two offenses are distinct.

"An indictment is multiplicitous and in violation of the Fifth Amendment's Double Jeopardy Clause if it charges a single offense in more than one count." *United States v. Brandon*, 17 F.3d 409, 422 (1st Cir.1994) (citing *United States v. Serino*, 835 F.2d 924, 930 (1st Cir.1987)). The longstanding test for multiplicity of charges was set down by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932): "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is that each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. at 182.

*Blockburger*, however, is often easier to state than apply, a point most recently shown when a splintered majority of the Supreme Court could not agree on how the test should be effectuated. *See United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Nonetheless, the Court understands that it is bound by the *Blockburger* test even if, as the First Circuit recently acknowledged, it "is mechanistic and often criticized." *United States v. Fraza*, 106 F.3d 1050, 1054 (1st Cir.1997). What is plain, at least, is that the *Blockburger* test *focuses* on the elements required to be proven under the applicable statutes, not on the actual allegations in the indictment. *See United States v. Parrilla-*

*Tirado*, 22 F.3d 368, 372 (1st Cir.1994). However, although the *Blockburger* test is primarily a rule of statutory construction, it does not govern if the analysis is overcome by a clear indication of contrary legislative intent. *Albernaz v. United States*, 450 U.S. 333, 340, 101 S.Ct. 1137, 1142–43, 67 L.Ed.2d 275 (1981).

Given this framework, the Court has examined the two provisions alleged to have been violated, both of which arise under separate titles of the Electronic Communications Privacy Act of 1986 ("ECPA"). Title I of the ECPA, which spans 18 U.S.C. §§ 2510–2521, proscribes the intentional interception of electronic communications and provides the basis for Count II. Title II, which spans 18 U.S.C. §§ 2701–2711, proscribes intentional access, without authorization, of stored electronic communications and provides the basis for Count III.

More specifically, Count II, the wiretap count, requires the Government to prove that Defendant (i) "intentionally" (ii) "intercep[ted]" (iii) "any wire, oral or electronic communication." 18 U.S.C. § 2511(1)(a). Count III, on the other hand, the unlawful access to voice mail count, requires proof that Defendant (i) "intentionally" (ii) "access[ed] without authorization" (iii) "a facility through which an electronic communication service is provided" and (iv) "thereby obtain[ed], alter[ed], or prevent[ed] authorized access to a wire or electronic communication while it is in electronic storage." 18 U.S.C. § 2701(a)(1).

The crux of Defendant's argument is that the "interception" element of Section 2511(1)(a) (Count II) is identical to "accessing" a facility through which electronic communication service is provided, a required element of Section 2701(a)(1) (Count III). "Both intercepting and accessing, as specifically alleged in the indictment," Defendant asserts, "mean listening to the human voice." (Def.'s Memo. (Docket No. 15) at 5.) Since both counts require proof that electronic communications were involved, Defendant

---

**1.** Count I, which charges Defendant with obstruction of justice in violation of 18 U.S.C. § 1503, plays no part in this motion.

continues, the Government's allegation in Count III—that Defendant actually listened to people's voice mail messages—demonstrates that Count II does not require proof of a different element than Count III. Moreover, Defendant continues, even if Count III otherwise requires proof of a different element than Count II, *Blockburger* requires that *each* count require proof of a separate element from the other in order to establish distinct offenses.

In response, the Government acknowledges that its proof, for purposes of both Counts II and III, will show that Defendant actually listened to stored voice mail messages intended for third parties. It emphasizes, however, that the *Blockburger* test focuses on the elements required under the statute, not on the Government's proof or the factual allegations in the indictment. *See Parrilla–Tirado*, 22 F.3d at 372. Then, homing in on the two applicable statutory provisions, the Government argues that there are distinct elements in each alleged crime. Foremost, the Government draws a distinction between the elements of "intercept" in Section 2511(a)(1) and "access" in Section 2701. If these elements are in fact different, the Government maintains, the *Blockburger* test has been met.

Of course, *Blockburger* cannot be satisfied simply by the use of different—although technically indistinguishable—statutory terms, nor does the Government so argue. Rather, the Government asserts that the terms "intercept" and "access" are in fact technically distinguishable. Section 2511(a)(1), the Government explains, requires that a defendant "actually *intercept* an electronic communication, that is, the defendant must actually acquire the content of the communication in some fashion." (Gov.'s Resp. (Docket No. 20) at 13 (emphasis added).) In contrast, the Government asserts, Section 2701 only requires "access," which, by implication, does not necessitate the acquisition of the communication. The Government then

provides an example: "a person could violate 18 U.S.C. § 2701 by entering the Justice Department's computer system and altering the codes that would allow *access* to e-mail by authorized users. This would be a violation even though confidential e-mail messages were never *intercepted.* Such conduct would not violate 18 U.S.C. § 2511(1)(a)." (*Id.* (emphasis added).)

Interestingly enough, by proffering an example, the Government seeks to provide its own definition of "access," since neither Title II nor Title I of the ECPA, on which Title II relies for its definitions (*see* 18 U.S.C. §§ 2522(d) and 2711), defines the term. Moreover, the Court does not believe that the Government can satisfy *Blockburger* by applying the statutory elements to hypothetical crimes. Thus, the Government's example does not reflect Count III as charged, namely, that Defendant actually "listened to and thereby obtained the contents of the voice mail boxes while the contents were in electronic storage." While the Government is certainly free to pose its hypothetical, the Court itself has looked to the applicable statutory terms, as clarified by legislative history.

The ECPA not only added the provisions of Title II in 1986, utilizing the term "access" in Section 2701 for the first time, but simultaneously redefined "intercept." "Intercept" is now defined in Title I as the "acquisition," whether by aural or other means, of the "contents of any wire, electronic, or oral communication." 18 U.S.C. § 2510(4). Like "access," the term "acquisition" is left undefined.

Prior to the passage of the ECPA, "intercept" encompassed only the "aural acquisition" of wire or oral communications. While "aural" was nowhere defined in the statute, it was, and is, commonly accepted to mean acquisition through the sense of hearing. *See United States v. Seidlitz*, 589 F.2d 152, 157 (4th Cir.1978).[2] Accordingly, "intercept"

**2.** *See also United States v. Bynum*, 360 F.Supp. 400, 408 (S.D.N.Y.) (finding that the term intercept under 18 U.S.C. § 2510(4), as then defined, equates with "listening to, monitoring, or hearing"), *aff'd*, 485 F.2d 490 (2d Cir.1973), *vacated on other grounds*, 417 U.S. 903, 94 S.Ct. 2598, 41

L.Ed.2d 209 (1974); *Smith v. Wunker*, 356 F.Supp. 44, 46 (S.D.Ohio 1972) (noting that the common understanding of "aural acquisition" means "to come into possession through the sense of hearing"); *Steve Jackson Games, Inc. v. United States Secret Service*, 36 F.3d 457, 461

originally applied to sound producing communications. As amended by the ECPA, "intercept" was redefined as including both "aural" and "other acquisition" of any wire, electronic or oral communication. The reference to "other acquisition" made clear "that it is illegal to intercept the nonvoice portion of a wire communication," e.g., the "digitized portion of a voice communication." *Steve Jackson Games*, 36 F.3d at 462 (citing legislative history).

This is not to say that "access" is always equivalent to "intercept." There is a temporal aspect to the definitions. Thus, it is apparent that "intercept" requires the contemporaneous acquisition of the information, whereas "access" could apply to both contemporaneous and stored transmissions. As one commentator has noted, "[b]ased on the common definition of 'intercept,' meaning to 'interrupt the progress of,' the acquisition of a wire, oral, or electronic communication will constitute an 'interception,' only while being transmitted in a manner prescribed by [Section] 2511(1)(b)(i)-(iii)." Thomas R. Greenberg, *E–Mail and Voice Mail: Employee Privacy and Federal Wiretap Statute*, 44 Am. U.L.Rev. 219, 248 (1994) (footnotes omitted). The commentator then goes on to draw a distinction between "intercept" and "access" in certain situations:

> By contrast, the stored communications provision of [Section] 2701 prohibit the unauthorized accessing of wire or electronic communications once stored. While the distinction between the terms "intercept" and "access" has little significance for forms of communication that only exist as transmissions, and are never stored, the distinction is critical when a transmitted communication is later electronically stored, because it is at the time of storage that a communication becomes subject to different provisions of the ECPA. This is the case with both E-mail and voice mail messages, both of which have a transmis-

sion phase and a storage phase. During the transmission phase, any protection against unlawful interception under Title III is governed by a [Section] 2511. On arrival in storage, the same messages are subject to [Section] 2701.

*Id.* (footnotes omitted).

This temporal distinction has not been addressed by the First Circuit, but has been recognized elsewhere. For example, the Fifth Circuit held that e-mail cannot be "intercepted" in violation of Section 2511(1)(a) when the acquisition of the contents of electronic communications was not contemporaneous with the transmission of those communications. *Steve Jackson Games*, 36 F.3d at 457. *See also United States v. Turk*, 526 F.2d 654, 658 (5th Cir.1976) (replaying previously recorded conversation is not an intercept because an "intercept" as defined prior to the ECPA, "require[s] participation by the one charged with an 'interception' in the contemporaneous acquisition of the communication through the use of the device").[3]

Likewise, the district court in *United States v. Reyes*, 922 F.Supp. 818, 836 (S.D.N.Y.1996), applied the reasoning of *Steve Jackson Games* when concluding that pressing a button on a pager to access its memory was not an interception within the meaning of the ECPA. The court found that "Congress' use of the word 'transfer' in the definition of 'electronic communication' and its omission in that definition of the phrase 'any electronic storage of such communication' (part of the definition of 'wire communication') reflects that Congress did not intend for 'intercept' to apply to 'electronic communications' when those communications are in 'electronic storage.'" *Id.* (quoting *Steve Jackson*, 36 F.3d at 461–62). Even more recently, the district court in *Bohach v. City of Reno*, 932 F.Supp. 1232, 1235–36 (D.Nev. 1996), concluded that the wiretap and voice mail provisions "distinguish the 'interception'

---

(5th Cir.1994) (defining "aural" as "of or relating to the ear" or "of or relating to the sense of hearing") (citing Webster's Third New International Dictionary (1967 ed.)).

**3.** As the Fifth Circuit further explained in *Steve Jackson Games*, the difference between Titles I and II of the ECPA is also reflected in the "strin-

gent" and "complicated" substantive and procedural requirements for a court ordered interception of electronic communications, as distinct from a warrant permitting accessing the contents of electronically stored communications. *Id.* at 463.

of an electronic communication at the time of transmission from the retrieval of such a communication after it has been put into 'electronic storage.'" An interception, the court concluded, is covered by Title I of the ECPA, while accessing information in electronic storage is covered by Title II. *Id.* at 1236.

■■■ The temporal distinction between "intercept" and "access" is critical here. Defendant is alleged in both counts at issue to have listened to and obtained the contents of voice mail while such contents were in electronic storage. The Government conceded at oral argument that Defendant's acts in the present matter did *not* include intercepting or accessing information *while in transmission.* Accordingly, the parallel elements of intercept and access, as alleged in Counts I and II respectively, are indistinguishable for purposes of *Blockburger.* Thus, even were the Court to accept the Government's further argument—that Section 2701 requires proof, in contrast to Section 2511, that the information be in "electronic storage" at the time it is accessed—the Court is still left to conclude that the wiretap count does not require proof of a fact distinct from the voice mail count.[4]

Even were the Court to concede the Government's hypothetical difference in the elements of the two crimes, " 'the *[Blockburger]* rule should not be controlling where, for example, there is a clear indication of contrary legislative intent.' " *Missouri v. Hunter,* 459 U.S. 359, 367, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983) (quoting *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)). *See also Catala Fonfrias v. United States,* 951 F.2d 423, 426 (1st Cir.1991); *United States v. Sadlier,* 649 F.Supp. 1560, 1563 (D.Mass.1986). Consideration of legislative intent is particularly necessary here given the complex nature of the Federal Wiretap Act, which has been de-

scribed as "famous (if not infamous) for its lack of clarity." *Steve Jackson Games,* 36 F.3d at 462 (citing *Forsyth v. Barr,* 19 F.3d 1527, 1542–43 (5th Cir.1994)).

As Defendant points out, the addition of Section 2701 to the existing wiretap law was an effort to "update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies." (Def.'s Memo. at 4 (citing 1986 U.S.C. Congressional and Administrative News at 3555).) As described, that update makes evident a legislative intent that there be a temporal difference between Sections 2511 and 2701, i.e., that Section 2701 was to govern once electronic messages were stored.

There may well be a factual distinction, as implied in the Government's example, see *supra* at 219, between accessing a voice mail (or e-mail) system for whatever purpose, without listening to the messages, and actually listening to (or reading) stored messages. Yet these distinct acts are simply aspects of "access" and can only be charged under Section 2701. Listening to a stored voice mail message does not make the act an "intercept" in violation of Section 2511. Only the interception of voice mail *while in transmission,* like a wiretap on a telephone in use, can amount to a violation of Section 2511. To the extent the Government believes that it had to charge Defendant under Section 2511 because he *listened* to the stored messages, the Court believes the Government is incorrect.

*CONCLUSION*

Other than Count I, see note 1 *supra,* there is really only one offense at issue in the present matter. Accordingly, the Court must disagree with the Government that Defendant's acts may be violative of both sections 2701 and 2511. Rather, the Court con-

---

4. While a *Blockburger* analysis usually does not entail an analysis of the factual allegations in the indictment, *see United States v. Goldberg,* 913 F.Supp. 629, 632 (D.Mass.1996) (citing *Parrilla–Tirado,* 22 F.3d at 372), the allegations in this indictment help bring into focus the elements of the charged offenses, particularly since such elements are so indistinct. The Court, however, has not assayed the evidence. *See United States v.*

*Morris,* 99 F.3d 476, 479 (1st Cir.1996) ("the *Blockburger* rule depends on statutory analysis, not on evidentiary comparisons"). Rather, the Court merely accepts the factual underpinnings of the indictment. Thus, despite Defendant's urgings, the Court has not accepted the more expansive approach of the Second Circuit in *United States v. Seda,* 978 F.2d 779, 781 (2d Cir.1992), in which the court approved the con-

cludes that Count II is indistinguishable in the circumstances presented here from Count III. Accordingly, the Court recommends that Defendant's motion, to the extent it seeks to dismiss Count II, should be ALLOWED.[5]

sideration of actual allegations in a particular case.

**5.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.