Thomas MINK, and the Howling Pig, an unincorporated association, Plaintiffs,

v.

Ken SALAZAR, in his official capacity as Attorney General of the State of Colorado, A.M. Dominguez, Jr., District Attorney for the 19th Judicial District, in his official capacity, and Susan Knox, a Deputy District Attorney working for the 19th Judicial District Attorney's Office, in her individual capacity, Defendants.

No. CIV.04–B–23(CBS).

United States District Court, D. Colorado.

Oct. 26, 2004.

A. Bruce Jones, Holland & Hart, LLP, Denver, CO, for Plaintiffs.

Richard Paul Brady, Jeffrey C. Parins, Sunita Sharma, Jeffrey A. Wells, Greeley, CO, for Defendants.

## MEMORANDUM ORDER AND OPINION

BABCOCK, Chief Judge.

The Plaintiffs in this case, Thomas Mink ("Mr.Mink") and The Howling Pig ("THP"), have filed a Motion for Partial Summary Judgment. The Defendant Ken Salazar, Attorney General of Colorado ("Attorney General"), and the Defendant Susan Knox ("Knox") have each filed motions to dismiss and Ms. Knox has moved, in the alternative, for partial summary judgment. In addition to the briefs of the parties, I have received the Amici Curiae briefs of the State of Colorado, the Colorado Press Association and the Reporter's Committee For Freedom of the Press on the constitutionality of Colorado's criminal libel statute, Colo.Rev.Stat. § 18–13–105 ("Libel Statute"), an issue the Plaintiffs have raised in this case. The Motions are adequately briefed and oral argument would not materially aid their resolution. For the reasons stated below, I GRANT the Defendants' Motions to Dismiss and DENY the Plaintiffs' Motion for Partial Summary Judgment.

### I. The Complaint

The First Amended and Supplemental Complaint ("Amended Complaint") alleges the following.

In the fall of 2003, Mr. Mink, a student at the University of Northern Colorado ("UNC"), began publishing THP, an internet-based journal concerned with current events affecting the UNC community. Mr. Mink created, maintained, and published THP using a computer that he shared with his mother in his mother's house. Among other things, THP featured a regular column from its purported editor, a fictitious character named "Mr. Junius Puke." The column included doctored photographs of an actual UNC professor named Junius Peake ("Professor Peake"). The Amended Complaint alleges, "The editorial column attributed to 'Professor Puke' spoofs and parodies Professor Peake by addressing subjects on which the real professor would be unlikely to write, or through the assertion of views diametrically opposed to those of Professor Peake." Amended Complaint, 5–6.

Professor Peake, not amused, contacted the District Attorney's office, launching an investigation into Mr. Mink's alleged calumny. The investigation encompassed Mr. Mink's personal computer, which the Greeley Police Department seized from Mr. Mink's residence pursuant to a search warrant reviewed by Ms. Knox and approved by a magistrate, unidentified written materials of Mr. Mink's, and records

and email communications subpoenaed from Yahoo, Inc., which hosts THP's web site, pursuant to a court order sought by Ms. Knox and issued by a court pursuant to Colo.Rev.Stat. § 16–3–301.1. Under threat of a charge of criminal libel, Mr. Mink allegedly stopped publishing THP for a time.

The computer has now been returned and two new editions of THP have since appeared. The Amended Complaint states, "The Howling Pig and Mr. Mink intend to publish future issues containing articles that could be construed as violating [the Libel Statute]." Amended Complaint, 12. The District Attorney has assured that no charges based upon the contents of the first three editions of THP will be filed, but Mr. Mink fears prosecution for defamatory materials that he may publish in the future. Amended Complaint, 13.

The Amended Complaint contains statements to the effect that Plaintiffs' counsel "explained" to various investigatory officials the unconstitutionality of their actions and that a "reasonable prosecutor would have known, or upon reasonable investigation could have discovered, . . . that Professor Peake was widely known for publicly expressing his views and was a public official or public figure." Amended Complaint, 6. The Plaintiffs allege, "Without intervention from this Court, Plaintiffs will have to choose whether to risk criminal prosecution or forego engaging in what they believe to be constitutionally-protected expression." Amended Complaint, 14.

The Complaint asserts claims against the Attorney General and A.M. Dominguez, Jr., in his official capacity as District Attorney for the 19th Judicial District ("District Attorney"), under 42 U.S.C. § 1983 and the First and Fourteenth Amendments for infringement of free speech ("First Claim"); against Ms. Knox under 42 U.S.C. § 2000aa *et seq.* for inva-

sion of privacy ("Second Claim"); against Ms. Knox under 42 U.S.C. § 1983 and the First and Fourth Amendments for an unreasonable search and seizure ("Third Claim"); and against Ms. Knox under 18 U.S.C. § 2701 *et seq.* for review of electronic communications without a search warrant and without probable cause ("Fourth Claim"). The Plaintiffs seek damages from Ms. Knox and a declaratory judgment holding that the Libel Statute is unconstitutional on its face.

## II. Ms. Knox's Motion to Dismiss

Ms. Knox moves for dismissal of the three counts of the Amended Complaint directed at her.

### A. Second Claim

 The Second Claim is predicated upon the Privacy Protection Act, 42 U.S.C. § 2000aa ("PPA"), which states, *inter alia,*

Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce; but this provision shall not impair or affect the ability of any government officer or employee, pursuant to otherwise applicable law, to search for or seize such materials, if-

(1) there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate: *Provided, however,* That a government officer or employee may not search for or seize such materials under the provisions of this paragraph if the offense to which the materials relate

consists of the receipt, possession, communication, or withholding of such materials or the information contained therein ....

42 U.S.C. § 2000aa(a) (emphasis original).

Ms. Knox argues that the Plaintiffs have failed to allege facts sufficient to state a claim under the PPA. She construes strictly the volitional element of the PPA; she did not "search for or seize" any work product materials possessed by the Plaintiffs. The only actions that the Amended Complaint attributes to Ms. Knox are review and approval of the affidavit that provided the basis for the search warrant. Because she was not present during the execution of the search warrant at the Mink residence, Ms. Knox asserts that her actions cannot fall within the PPA's purview.

The Plaintiffs argue that Ms. Knox comes within the statute notwithstanding her absence during the search, because, in passing the statute, Congress was accepting an invitation extended by the Supreme Court in *Zurcher v. Stanford Daily*, 436 U.S. 547, 567, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). They divine Congress' intent by a tenuous line—because the defendants in *Zurcher*, against whom the Supreme Court found no cause of action could be brought, included a district attorney who might not have been present during the search at issue (the decision does not say), Congress must not have intended to require a defendant's physical presence during the search. Whether or not Congress was attempting to remedy the specific injustice that the Plaintiffs perceive in *Zurcher*, no ambiguity in the statute makes resort to such opaque legislative intent necessary. *United States v. Botefuhr*, 309 F.3d 1263, 1279 (10th Cir.2002).

Ms. Knox cites to dicta in *Citicasters v. McCaskill*, 89 F.3d 1350 (8th Cir.1996) for the proposition that physical presence during the execution of the search warrant is a prerequisite to liability under the PPA; a similar argument made in that case was "well taken." *Citicasters*, 89 F.3d at 1356. The *Citicasters* court did not, however, rely on the circumstance of the defendant's whereabouts. The rule enunciated by the *Citicasters* court is whether the defendant "directed, supervised, or otherwise engaged in the execution of the warrant to such an extent that a finding can be made that she 'searched for or seized'" the materials. *Citicasters*, 89 F.3d at 1356.

█ Ms. Knox's absence during the search does not dispose of the question one way or the other. However, the Plaintiffs have not alleged any action that could be construed as engagement in the warrant's execution. Nothing in the PPA or *Citicasters* indicates that review of the probable cause for a warrant application, without more, constitutes involvement in the *execution* of the warrant sufficient to create liability. The language of the PPA concerns itself with the search and seizure. Indeed, a search warrant application is irrelevant to the operation of the PPA; the PPA "does not require an application for a search warrant to describe any exceptions to the Act." *Citicasters*, 89 F.3d at 1356. I conclude that the Plaintiffs have failed to state a claim and the Second Claim must be dismissed.

**B. Third Claim**

█ Ms. Knox claims absolute immunity from the Third Claim because, in reviewing and approving the affidavit, she acted in a quasi-judicial function. *See Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The Plaintiffs respond that Ms. Knox's actions amounted to legal advice to the police, a non-judicial function, and do not justify absolute immunity. *See Burns v. Reed*, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).

State prosecuting attorneys are entitled to absolute immunity from Section 1983 actions for conduct "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430, 96 S.Ct. 984. In *Imbler*, the Supreme Court held that a state prosecuting attorney acting within the scope of his duties in initiating and pursuing a criminal prosecution is not amenable to suit under 42 U.S.C. § 1983. The Court declined to distinguish with specificity those prosecutorial activities that are merely administrative, and do not enjoy absolute immunity, from those actions that are immunized. *Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. 984. Subsequent Supreme Court decisions have clarified somewhat the boundaries of *Imbler* immunity. A prosecutor enjoys absolute immunity for preparing and filing an information and for moving for an arrest warrant, *see Kalina v. Fletcher*, 522 U.S. 118, 129, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997), but only qualified immunity for acting as a complaining witness in averring a complaint for arrest and its supporting affidavit, *see Kalina*, 522 U.S. at 129–130, 118 S.Ct. 502. Investigation of the evidence against a potential criminal defendant prior to his arrest justifies only qualified immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 275, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Preparation and presentation of evidence at a probable cause hearing in support of a search warrant application is absolutely immunized, *see Burns*, 500 U.S. at 487, 111 S.Ct. 1934, while advising police about interrogation techniques and the sufficiency of cause for arrest is not, *see Burns*, 500 U.S. at 496, 111 S.Ct. 1934.

I am unpersuaded by the Plaintiffs' claim that the *Burns* decision ends the matter. The superficial resemblance between Ms. Knox's actions and those extended qualified immunity in *Burns* is no stronger than the resemblance Ms. Knox's actions bear to the conduct covered with absolute immunity. Taking the Plaintiffs' allegations as true, Ms. Knox can more correctly be said to have "facilitated the issuance of a search warrant," *see Burns*, 500 U.S. at 487, 111 S.Ct. 1934, than she can be said to have been "providing legal advice to the police," *see Burns*, 500 U.S. at 492, 111 S.Ct. 1934. Nothing in the Amended Complaint indicates that Ms. Knox discussed with police the legal advisability of searching the Mink residence or that she assisted the police in drafting the warrant in such a way as to increase the likelihood that the magistrate would find probable cause. Instead, the Plaintiffs allege only that Ms. Knox "reviewed and approved the affidavit submitted to the state district court in support of the warrant to search the Minks' home." Amended Complaint, 16.

The Tenth Circuit, trying to derive a definite rule from the Supreme Court's decisions, has stated that "the determinative factor is 'advocacy' because that is the prosecutor's main function and the one most akin to his quasi-judicial role." *Roberts v. Kling*, 104 F.3d 316, 319 (10th Cir. 1997), *cert. granted and judgment vacated on other grounds*, 522 U.S. 1025, 118 S.Ct. 623, 139 L.Ed.2d 604 (1997), *aff'd on remand*, 144 F.3d 710 (10th Cir.1998), *cert. denied*, 525 U.S. 1139, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999). However, the Tenth Circuit has extended absolute immunity to administrative or investigative activities that do not, in a strict sense, constitute advocacy before a tribunal "when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir.1991) (quoting *Snell v. Tunnell*, 920 F.2d 673, 693 (10th Cir.1990)). Also, though the Plaintiffs make much of the fact that no criminal proceedings had commenced against Mr. Mink when Ms. Knox reviewed and approved the warrant affidavit, as *Burns* itself demonstrates, that happen-

stance is not dispositive; "prosecutorial functions may also involve some activities preliminary to the initiation of an action, including actions away from the courtroom." *Roberts*, 104 F.3d at 319.

Indeed, no bright line emerges from the case law. Instead, the Tenth Circuit has "applied a continuum-based approach to these decisions, stating 'the more distant a function is from the judicial process and the initiation and presentation of the state's case, the less likely it is that absolute immunity will attach.'" *Gagan v. Norton*, 35 F.3d 1473, 1475–1476 (10th Cir. 1994), *quoting Pfeiffer*, 929 F.2d at 1490.

Ms. Knox's review of the warrant affidavit was a proximate (and commendable) precursor to the presentation of the affidavit before the magistrate, an undisputably quasi-judicial activity. Had Ms. Knox herself presented the warrant affidavit to the magistrate after reviewing and approving it, all of her actions undoubtedly would have fallen within the immunity extended in *Burns* and *Roberts*. I cannot see how her delegation of the latter task to a police officer affects her immunity for the former. It is not too much to presume that the police brought the affidavit to Ms. Knox for approval in her capacity as an "officer of the court." *Pfeiffer*, 929 F.2d at 1490.

The rationale underlying absolute prosecutorial immunity counsels in favor of recognizing it in this case. The *Imbler* Court explained that the immunity of a prosecutor is based upon the same considerations that underlie the common-law judicial immunities that judges and grand jurors enjoy. *Imbler*, 424 U.S. at 422–423, 96 S.Ct. 984. Subjecting prosecutors to liability for prosecuting unsuccessful cases would, the Court reasoned, undermine performance of the prosecutor's duties; the "public trust of the prosecutor's office would suffer if he were constrained in making every decision by the conse-

quences in terms of his own potential liability in a suit for damages." *Imbler*, 424 U.S. at 424–425, 96 S.Ct. 984. "Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law." *Imbler*, 424 U.S. at 425, 96 S.Ct. 984.

Police ought to be encouraged to bring warrant affidavits to prosecutors before entreating magistrates. Such a practice promotes reliability and judicial economy. Prosecutors are expected to be as knowledgeable as judges concerning the legal requirements of probable cause and are qualified to make the fundamentally judicial determination that an affidavit does or does not meet the legal standard. Prosecutors in such circumstances must, if the practice is to produce just results, be immunized from suit for their decisions as are judges. And prosecutors ought not be discouraged from performing such reviews by the prospect of suit.

An additional consideration for the *Imbler* Court was the heightened difficulty an honest prosecutor would face in asserting a qualified immunity defense because in a vacuum, many decisions that a prosecutor makes can be perceived as constitutional deprivations. *Imbler*, 424 U.S. at 425–426, 96 S.Ct. 984. Qualifying a prosecutor's immunity "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Imbler*, 424 U.S. at 427–428, 96 S.Ct. 984. Of course, when viewed in context, a prosecutor's advocacy for the state is often counterbalanced by the advocacy of the defense. If a prosecutor presents a witness of dubious credibility, for example, the defense is free to impeach that witness through cross-examination. That countervailing force is absent in this case. How-

ever, many adversarial acts of prosecutors—such as presenting evidence for search warrant applications, appearing before grand juries, and swearing out criminal complaints—meet no resistance from defense attorneys but warrant absolute immunity, nonetheless because they are essential to the efficient functioning of the criminal justice system.

■ Ms. Knox cites to Colorado Revised Statutes Section 20–1–106.1 ("Immunity Act") as a basis of absolute immunity. As state law, the Immunity Act cannot immunize Ms. Knox from a 42 U.S.C. § 1983 claim. *See Howlett v. Rose,* 496 U.S. 356, 376, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). However, in the absence of clear Federal law on the question, the Immunity Act provides a persuasive understanding of what constitutes a quasi-judicial act. It provides that, in the absence of bad faith, prosecutors "shall be immune from liability for the performance of" various "quasi-judicial" duties, including examination and evaluation of an affidavit for a search warrant "before such affidavit is submitted to a judge." Colo.Rev.Stat. § 20–1–106.1(1 and 2). This rule is consistent with the ends outlined in *Imbler.*

Ms. Knox is absolutely immune from liability on the Third Claim.

### C. Fourth Claim

■ The Plaintiffs' Fourth Claim is predicated upon a provision of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2703, which states, *inter alia,*

(a) Contents of wire or electronic communications in electronic storage.—A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

(b) Contents of wire or electronic communications in a remote computing service.—(1) A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable... (B) with prior notice from the governmental entity to the subscriber or customer if the governmental entity— ... (ii) obtains a court order for such disclosure....

The Amended Complaint does not allege how long Mr. Mink's email communications had been stored in Yahoo's electronic storage system or whether Mr. Mink was provided notice of the court order.

Section 2707 provides a right of action against those who violate the ECPA "with a knowing or intentional state of mind...." 18 U.S.C. § 2707(a). However, "A good faith reliance on... a court warrant or order... is a complete defense to any civil or criminal action brought under this chapter or any other law." 18 U.S.C. § 2707(e).

Ms. Knox argues that, just as her actions fell outside the volitional element of the PPA, she did nothing to violate the ECPA. Here again, the Amended Complaint alleges only that Ms. Knox reviewed and approved the affidavit that provided

the basis for the court order by which Yahoo was compelled to produce Mr. Mink's email communications. The Plaintiffs argue that but for Ms. Knox's approval of the affidavit, no disclosure would have taken place and her participation in the events leading up to the disclosure thus gives rise to liability.

The but-for test that the Plaintiffs contemplate would produce results that the Plaintiffs cannot intend. Taken literally, it would apply to the clerk who typed the order, the magistrate who approved it, and the notary public who sealed it. In short, it would encompass everyone but Ms. Knox; the police could more easily (and inadvisably) have obtained the court order without first going to Ms. Knox for approval. The but-for test is untenable.

Notably, the Plaintiffs do not cite any authority. Ms. Knox claims not to have found any case law on the question. The volitional prohibition of the ECPA—"require the disclosure"—is different from that of the PPA—"search for or seize"—and analogy to the latter is unhelpful.

For definitions of terms, Section 2711 of the ECPA refers the reader to Section 2510, which, unfortunately, leaves most of the volitional terms of the ECPA undefined. As several courts have noted, the statute is "famous (if not infamous) for its lack of clarity." *Steve Jackson Games, Inc. v. United States Secret Serv.*, 36 F.3d 457, 462 (5th Cir.1994). The only volitional term defined is "intercept," which "means the aural or other acquisition" of communications. 18 U.S.C. § 2510(4). One court, looking to that definition in its attempt to interpret the volitional element of Section 2701—"intentionally access" an electronic communication facility—noted that Section 2510(4) presents a further definitional problem; "acquisition," like "access," is left undefined by the act. *United States v. Moriarty*, 962 F.Supp. 217, 219 (D.Mass.

1997). In that case, the court resolved the dilemma by looking to legislative history.

Section 2703 was part of the 1986 amendment to the pre-existing Omnibus Crime Control and Safe Streets Act of 1968 ("Wire Tap Act"), 18 U.S.C. 2510 *et seq.*, which circumscribed Government interception of wire and oral communications and applied, at the time, only "where the contents of a communication can be overheard and understood by the human ear." 1986 U.S.C. Congressional and Administrative News 3555, 3556. In order to bring the Wire Tap Act to bear upon "development of communications and computer technology," Congress passed the 1986 amendment, intending to extend coverage to modern "large-scale electronic mail operations, computer-to-computer data transmissions, cellular and cordless telephones, paging devices, and video teleconferencing." *Id.* Recognizing "that computers are used extensively today for the storage and processing of information," and particularly intending to protect information "subject to control by a third party computer operator," the Senate Judiciary Committee designed the ECPA to extend existing limits on Government and other third-party access of wire and mail communications "to stored wire and electronic communications and transactional records." 1986 U.S.C.C.A.N at 3557.

It is not too much to infer that the Government action prohibited by the ECPA is that prohibited by the Wire Tap Act, namely, acquisition of protected information. As the *Moriarty* court noted, the only difference between "intercept," as that term is used in the Wire Tape Act, and "access," as that term is used in Section 2701 of the ECPA, is temporal; interception is acquisition simultaneous with transmission while access is acquisition of material already stored. *Moriarty*, 962 F.Supp. at 220. Likewise, "require the

disclosure," the term at issue in Section 2703, is merely an extension of the Wire Tap Act's volitional element—acquisition—to modern technologies. The Senate Judiciary reported that "section 2703 provides requirements for the government to *obtain the contents* of" a stored electronic communication. 1986 U.S.C.C.A.N at 3592 (emphasis provided). The term "obtain the contents" is used several times in the report's discussion of Section 2703, along with the slightly varied, "access the contents." Both of these phrases discuss an activity in which Ms. Knox is not alleged to have engaged.

With this legislative history in mind, it is perhaps not surprising that decisions construing the volitional language of Section 2703 of the ECPA have invariably involved some active solicitation of the protected information by the defendant. *See Freedman v. Am. Online, Inc.*, 303 F.Supp.2d 121 (D.Conn.2004) (two police officers solicited from America Online, Inc. ("AOL") information stored electronically using a defective search warrant); *McVeigh v. Cohen*, 983 F.Supp. 215 (D.D.C.1998) (Navy officer solicited user identification from AOL); *United States v. Reyes,* 922 F.Supp. 818, 837 (S.D.N.Y.1996) (noting that Section 2703 applies to the accessing of stored information). The Plaintiffs have not offered any reason to depart from the common understanding of the ECPA. To give the statute the application the Plaintiffs request would stretch the volitional element well beyond the usage intended by Congress.

This conclusion is also commended by the good-faith defense provision of the ECPA, 18 U.S.C. § 2707(e), which covers those who conduct a search in good-faith reliance upon a warrant or court order. As the Plaintiffs point out, applying that defense to Ms. Knox would produce a temporal problem—Ms. Knox could not have relied upon the court order before it was issued. The Plaintiffs, however, cannot have it both ways. If the good-faith reliance defense does not reach retrospectively, then it makes no sense to extend liability back in the first place. Put another way, Ms. Knox's actions must either fall within both the volitional and the defense provisions of the ECPA or come under neither. Congress could not have intended the result urged by the Plaintiffs and the language of the statute does not require it.

I conclude that the Plaintiffs have failed to state a claim and that their Fourth Claim must be dismissed.

### III. Attorney General's Motion to Dismiss

 The Plaintiffs allege in the Amended Complaint that no criminal charges are pending against them and that the District Attorney has assured that no charges will be filed. Nevertheless, they fear prosecution in the future because they intend to continue violating the Libel Statute. The Plaintiffs lack standing to preempt a potential prosecution. The Tenth Circuit has held that "assurances from prosecutors that they do not intend to bring charges are sufficient to defeat standing, even when the individual plaintiff had actually been charged or directly threatened with prosecution for the same conduct in the past." *D.L.S. v. Utah*, 374 F.Supp. 971, 975 (10th Cir.2004), *citing Faustin v. City & County of Denver*, 268 F.3d 942, 948 (10th Cir.2001) and *PETA v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002). The First Count is dismissed.

It is ORDERED that

1) Ms. Knox's Motion to Dismiss [21–1] is GRANTED;

2) the Attorney General's Motion to Dismiss [22–1] is GRANTED;

3) the Plaintiffs' Motion for Partial Summary Judgment [32–1] is DENIED;

4) the case is DISMISSED; and

5) the Defendants are awarded costs.