TORRUELLA, Circuit Judge.
The United States appeals from the district court’s dismissal of Count One of the Indictment against defendant Bradford C. Councilman (“defendant”). Count One charged defendant with conspiring to engage in conduct prohibited by various provisions of the Wiretap Act, 18 U.S.C. §§ 2510-2522, in violation of 18 U.S.C. § 371. We affirm.
I. Facts
Defendant was Vice-president of Inter-loc, Inc. (“Interloc”). Interloc’s primary business was as an online rare and out-of-print book listing service. As part of its services, Interloc provided certain book dealer customers with an electronic mail (“e-mail”) address and acted as the service provider. The dealer was provided with an e-mail account ending in “@Inter-loc.com”.[1]
*199 In May 1998, Alibris, a California corporation, acquired Interloc. Defendant was Vice-president, shareholder and employee of Interloc and Alibris. Among defendant’s responsibilities was the management of the Internet Service Provider (“ISP”) and the book dealer subscription list managed by Interloc.
The parties stipulated to the following facts relevant to the transfer of electronic messages by the Interloc systems. An email message, which is composed using an e-mail program, is transferred from one computer to another on its way to its final destination, the addressee. Building on the principle of store and forward, the message is handed to a Message Transfer Agent (“MTA”) which stores the message locally. The message is routed through the network from one MTA to another until it reaches the recipient’s mail server, which accepts it and stores it in a location accessible to the recipient. Once the email is accessible to the recipient, final delivery has been completed. The final delivery process places the message into storage in a message store area. Often, a separate Mail Delivery Agent (“MDA”) will be required to retrieve the e-mail from the MTA in order to make final delivery.
Interloc’s computer facility used a program known as procmail (short for process mail) as its MDA. Procmail operates by scanning and sorting e-mail together with an MTA computer program known as “sendmail.”
According to the Indictment, on or about January 1998, defendant directed Interloc employees to write computer code to intercept and copy all incoming communications from Amazon.com to subscriber dealers. The Interloc systems administrator wrote a revision to the mail processing code called procmail.rc (“the procmail”), designed to intercept, copy, and store, all incoming messages from Amazon.com before they were delivered to the members’ e-mail, and therefore, before the e-mail was read by the intended recipient. Defendant was charged .with using the proc-mail to intercept thousands of messages. Defendant and other Interloc employees routinely read the e-mails sent to its members seeking to gain a commercial advantage.
The procmail was designed to work only within the confines of Interloc’s computer. At all times that MTA sendmail and MDA procmail performed operations affecting the e-mail system, the messages existed in the random access memory (RAM) or in hard disks, or both, within Interloc’s computer systems. Each of the e-mails at issue constituted an “electronic communication” within the meaning of 18 U.S.C. § 2510(12).
Count One of the Indictment charged defendant with a violation of 18 U.S.C. § 371 for conspiracy to violate 18 U.S.C. § 2511. Defendant, allegedly conspired to intercept the electronic communications, to intentionally disclose the contents of the intercepted communications, in violation of 18 U.S.C. § 2511(l)(a), and to use the contents of the unlawfully obtained electronic communication, in violation of 18 U.S.C. § 2511(l)(c). Finally, the government alleged that defendant had conspired to cause a person to divulge the content of the communications while in transmission to persons other than the addressees of the communications, in violation of 18 U.S.C'. § 2511(3)(a).[2] The object of the conspiracy, according to the government, was to exploit the content of e-mail from *200 Amazon.com, the Internet retailer, to dealers in order to develop a list of books, learn about competitors and attain a commercial advantage for Alibris and Inter-loc.[3]
Defendant moved to dismiss the Indictment for failure to state an offense under the Wiretap Act, as the e-mail interceptions at issue were in “electronic storage,” as defined in 18 U.S.C. § 2510(17), and could not be intercepted as a matter of law. The district court did not initially grant the motion to dismiss but, upon further briefing by the parties, granted the motion and dismissed Count One. The district court found that the e-mails were in electronic storage and that, therefore, the Wiretap Act could not be violated because the requisite “interception” was lacking. United States v. Councilman, 245 F.Supp.2d 319 (D.Mass.2003).
II. Analysis
A. The Wiretap Act
We review questions of statutory interpretation de novo. See United States v. Jones, 10 F.3d 901, 904 (1st Cir.1993). The issue in this case is whether there was an “intercept” of a communication within the meaning of the Wiretap Act. In cases of statutory construction we begin with the language of the statute. See Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). We determine the meaning of a word from the context in which it is used. See Holloway v. United States, 526 U.S. 1, 6-7, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999).
The Electronic Communications Privacy Act (“ECPA”) amended Title III of the Omnibus Crime Control and Safe Streets Act of 1968, commonly known as the federal wiretap law. See Electronic Communications Privacy Act, Pub.L. No. 99-508, 100 Stat. 1848 (1999). The ECPA was divided into Title I, commonly known as the Wiretap Act, 18 U.S.C. §§ 2510-2522, and Title II, commonly known as the Stored Communications Act, 18 U.S.C. §§ 2701-2711.[4] The amendments provided for the protection of electronic communications along with oral and wire communications. See S.Rep. No. 99-541, at 11 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3565.
We begin our analysis by highlighting the difference between the definitions of “wire communications” and “electronic communications” in the Wiretap Act, mindful that the communications at issue in this appeal are electronic in nature. Under 18 U.S.C. § 2510(1), a
“wire communication” means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection between the point of origin and the point of reception furnished or operated by any person engaged in providing or operating such facilities ... and such term includes any electronic storage of such communication....
18 U.S.C. § 2510(1). By comparison, “ ‘electronic communication’ means any transfer of signs, signals, writing, images, *201 sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system.” Id. at § 2510(12). No mention is made of electronic storage of electronic communications. See generally In re Hart, 328 F.3d 45, 49 (1st Cir.2003)(“[W]hen Congress includes a particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.”).
“Intercept” is defined as “the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.” 18 U.S.C. § 2510(4).
The statute that defendant is charged with conspiring to violate, 18 U.S.C. § 2511, provides criminal penalties to be imposed on “any person who — (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.” 18 U.S.C. § 2511(l)(a).
Relying on the language of the statute and the decisions of our sister circuits, the district court held that Congress did not intend for the Wiretap Act’s interception provisions to apply to communication in electronic storage. Councilman, 245 F.Supp.2d at 321. The district court rejected “[t]he Government’s position ... that the Wiretap Act applies to interceptions that take place when the message ... is ‘in transit’ or ‘in process of delivery.’ ” Id. Relying on the definition of electronic storage, the district court held that no interception can occur while the e-mails are in electronic storage and therefore, without the requisite interception, the Wiretap Act could not be violated. •
The scope of electronic communications that can theoretically be intercepted is obviously reduced when the definition does not include electronic storage of such communications, as is the case with wire communications. In addition, electronic storage includes a vast range of possible situations including “(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof....” 18 U.S.C. § 2510(17)(A). The government argues that this section does not necessarily place the e-mails in question in this case outside the interception requirement of 18 U.S.C. § 2511(a).
The particular problem confronted in this case is what has been called the “contemporaneous” problem in the intercept requirement of the Wiretap Act. See In re Pharmatrak, 329 F.3d 9, 21-22 (1st Cir.2003)(because the statute was written before the widespread use of the Internet and other media prior opinions may not be helpful in addressing current problems). The government argues that given the particular nature of electronic‘communications and the mechanisms used to retrieve them, 18 U.S.C. § 2511(a) is a proper foundation for Count One of the Indictment. In addition, the government argues, cases from other circuits are distinguishable on their facts because none used the procmail at issue in this case.[5] We have commented on the issue presented in this case, see Pharmatrak, 329 F.3d at 21-22, but have not resolved it.[6]
*202 The first ease to address the issue of unlawful intercept in the context of electronic communications is Steve Jackson Games, Inc. v. United States Secret Service, 36 F.3d 457 (5th Cir.1994). There, the plaintiff company sued the Secret Service because the agency had seized a computer used to operate a bulletin board system, but which also contained private, unretrieved electronic mail. Id. at 459. The plaintiff provided its customers with the ability to send and retrieve e-mail, which was stored on the company’s hard disk drive temporarily, until the recipient retrieved the e-mail. Id. at 458. After seizing the computer, the Secret Service allegedly opened the private e-mails, read them and deleted them. The company sued, alleging, inter alia, a violation of the Wiretap Act. Id. at 459-60.
The Fifth Circuit held that the seizure of sent but unretrieved e-mail did not constitute an intercept for purposes of 18 U.S.C. § 2511(l)(a). See Steve Jackson Games, 36 F.3d at 461-62. In reaching that conclusion, it relied on the difference in the definitions of electronic and wire communication and the definition of electronic storage. “Congress’ use of the word ‘transfer’ in the definition of ‘electronic communication,’ and its omission in that definition of the phrase ‘any electronic storage of such communication’ (part of the definition of ‘wire communication’) reflects that Congress did not intend for ‘intercept’ to apply to ‘electronic communications’ when those communications are in ‘electronic storage.’ ” Id. (footnote omitted); see also Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 114 (3d Cir.2003) (adopting the reasoning in Steve Jackson Games as to the meaning of intercept under the relevant version of the Wiretap Act).
In contrast, Konop v. Hawaiian Airlines, Inc., 302 F.3d 868 (9th Cir.2002), cert. denied, 537 U.S. 1193, 123 S.Ct. 1292, 154 L.Ed.2d 1028 (2003), concerned a plaintiff, an employee of Hawaiian Airlines, who operated a secure website which posted criticism of his employer. A vice-president of the airline obtained permission from authorized users to view the website. Plaintiff sued, alleging, inter alia, that defendant had violated the Wiretap Act by violating the terms of use of the website and entering a secure website under false pretenses.
The Ninth Circuit, after granting panel rehearing, reversed its earlier position that the electronic communications were covered under the Wiretap Act. It did so because, in its view, the conduct of the defendant did not constitute an intercept as that term is defined. Konop, 302 F.3d at 876. Relying on Steve Jackson Games, it held that “for a website such as Konop’s to be ‘intercepted’ in violation of the Wiretap Act, it must be acquired during transmission, not while in electronic storage.” Id. at 878. In doing so, it rejected the position the government takes in this case, that, given the nature of e-mail, the Wiretap Act must apply to en route storage. Id. at 879 n. 6. “While this argument is not without appeal, the language and structure of the [Act] demonstrate that Congress considered and rejected this argument.” Id. The court relied, as did the district court in this case, on the expansive definition of the term “electronic storage” in 18 U.S.C. § 2510(17)(A). The dismissal of the Wiretap Act claim was affirmed.
The government is correct that the electronic communications at issue here were acquired in a different manner than in Steve Jackson Games and Konop. Defendant’s proemail operated to obtain the e-mails before they were received by its intended recipients. While the e-mail in Steve Jackson Games was retrieved from storage in a computer and the website in *203 Konop was accessed under false pretenses, the e-mails in this case were accessed by the procmail as they were being transmitted and in real time. However, the presence of the words “any temporary, intermediate storage” in 18 U.S.C. § 2510(17) controls. On the facts of this case, it is clear that the electronic communications in this case were in a form of electronic storage. It may well be that the protections of the Wiretap Act have been eviscerated as technology advances. See United States v. Steiger, 318 F.3d 1039, 1047-51 (11th Cir.2003) (holding intercept did not occur because there was no contemporaneous acquisition but commenting that under the narrow reading of the statute few seizures will constitute interceptions under Wiretap Act). As the stipulation reached by the parties states, “[a]t all times that sendmail and procmail performed operations affecting the email messages at issue, the messages existed in the random access memory (RAM) or in hard disks, or both, within Interior's computer system.” When defendant obtained the e-mails, they were in temporary storage in Interior's computer systems. There was also a stipulation that “[n]either sendmail nor procmail performed functions that affected the emails in issue while the emails were in transmission through wires or cables between computers.” This fact places the messages outside the scope of 18 U.S.C. § 2511(a), and into temporary electronic storage under 18 U.S.C. § 2510(17)(A). Accord Steiger, 318 F.3d at 1049; Konop, 302 F.3d at 878; Steve Jackson Games, 36 F.3d at 462; see also United States v. Moriarty, 962 F.Supp. 217 (D.Mass.1997) (holding that for Wiretap Act provisions to be violated as to electronic communications contemporaneous acquisition is necessary); United States v. Reyes, 922 F.Supp. 818, 836 (S.D.N.Y.1996) (same).
The government argues, and the dissent is persuaded by this argument, that the legislative history of the statute demonstrates that if an electronic communication is obtained while it is simultaneously in transmission and in storage, then an intercept occurs. Notwithstanding the fact that we find the language of the statute unambiguous, exploring this contention merely confirms our position as to the meaning of the statute. The government points to dicta in Pharmatrak as supporting the conclusion that electronic communications are protected when they are in storage, because by their nature, they exist in storage and transit at the same time.
[T]he storage-transit dichotomy adopted by earlier courts may be less than apt to address current problems. As one court recently observed, “[t]echnology has, to some extent, overtaken language. . Traveling the internet, electronic communications are often — perhaps constantly— both ‘in transit’ and ‘in storage’ simultaneously, a linguistic but not a technological paradox.”
329 F.3d at 21-22 (quoting Councilman, 245 F.Supp.2d at 321). However, the legislative history of the Act clearly states that the definition of intercept was not altered by the amendments. See S.Rep. No. 99-541, at 12, reprinted in 1986 U.S.C.C.A.N. at 3566 (stating that “[t]he definition of ‘intercept’ under current law is retained with respect to wire and oral communications except that the term ‘or other’ is inserted ■ after ‘aural’ ”). Even assuming arguendo that we should look outside the text, the government’s arguments based on the legislative history are unavailing.
The Wiretap Act’s purpose was, and continues to be, to protect the privacy of communications. We believe that the language of the statute makes clear that Congress meant to give lesser protection to electronic communications than wire and oral communications. Moreover, at this juncture, much of the protection may have *204 been eviscerated by the realities of modern technology. We observe, as most courts have, that the language may be out of step with the technological realities of computer crimes. However, it is not the province of this court to graft meaning onto the statute where Congress has spoken plainly.[7] We therefore affirm the district court’s dismissal of Count One of the Indictment on the premise that no intercept occurred in this case, and therefore, the Wiretap Act could not be violated.
B. The Stored Communications Act
Defendant also argues that his conduct was lawful under Title II of the ECPA, or the Stored Communications Act, 18 U.S.C. § 2701 et seq., and therefore outside the criminal provisions of the Wiretap Act. Specifically he relies on the provider exceptions, 18 U.S.C. § 2701(c)(1). Given our reading of the Wiretap Act, we need not comment on this argument. We note, however, that the intersection of the Wiretap Act and the Stored Communications Act “is a complex, often convoluted, area of the law.” United States v. Smith, 155 F.3d 1051, 1055 (9th Cir.1998). Defendant’s argument takes us beyond the charges in the Indictment. Therefore, we need not stray beyond the text of the Wiretap Act into the Stored Communications Act because the government sought to indict defendant only for conspiracy to violate Title 1,18 U.S.C. § 2511(a).
III. Conclusion
For the reasons stated above, the district court's order dismissing Count One is affirmed.

. Interloc also did business under the name Valinet. Valinet functioned as an electronic service provider to the general public, not just bookdealers, for a monthly fee using the domain name @valinet.com. None of the e-mails at issue in this case were addressed by its sender to any addressee using the domain @valinet.com.

. Count Two of the Indictment, which charged defendant with conspiracy to violate 18 U.S.C. §§ 1030(a)(2)(C) and (c)(2)(B), was dismissed at the request of the government after the district court granted defendant's motion to dismiss Count One.

. The stipulation signed by the parties also included a lengthy definition of the term email. In this appeal, we are more concerned with the mechanism used to send and receive e-mail and therefore highlight those sections of the stipulation.

. The Wiretap Act and Stored Communications Act were amended again by the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (USA PATRIOT Act), Pub.L. No. 107-56, 115 Stat. 272 (Oct. 26, 2001). All references in this opinion are to the statute before it was amended.

. The government refers to the procmail as an e-mail syphon.

. Pharmatrak did not resolve the issue because the interception there was at the point where communications were being sent through a wire to the website. The messages were not placed in any type of storage before their interception, therefore skirting the “contemporaneous” problem.

. In fact, defendant is correct to make an argument, on due process grounds, that he is entitled to the benefit of any ambiguity in the statute. While we find there is no ambiguity in Congress’s language, in a criminal case we have the constitutional obligation to define language narrowly. See, e.g., United States v. Colón-Ortiz, 866 F.2d 6, 8 (1st Cir.1989).