TORRUELLA, Circuit Judge,
with whom CYR, Senior Circuit Judge, joins (Dissenting).
Although I commend Judge Lipez on his erudite and articulate majority opinion, I am impeded from joining the same for two reasons. First, the indictment is legally insufficient to establish a criminal violation of 18 U.S.C. § 371 for conspiracy to violate the Wiretap Act, 18 U.S.C. § 2511, insofar as the e-mails Councilman is alleged to have retrieved were in “electronic storage,” 18 U.S.C. § 2510(17), when that action took place, and therefore, the Wiretap Act’s requisite element of “interception,” 18 U.S.C. § 2511, is lacking. See United States v. Councilman, 373 F.3d 197, 200-04 (1st Cir.2004). Second, and in the alternative, the result reached by the en banc majority deprives Councilman of due process of law, because he had no “fair warning” of the potential criminal consequences of his actions. See United States v. Lanier, 520 U.S. 259, 265, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).
But for the juxtaposition of our respective views, there is not much new in the positions of the majority and dissent from those presented by the panel opinion except that, by reason of the majority’s conclusion that the indictment charges a valid *86 criminal violation, we are required to discuss Councilman’s due process claim, which the panel did not have to reach. See Councilman, 373 F.3d at 204 n. 7.
I.
The facts of this case as stipulated by the parties state that “[a]t all times that sendmail and procmail performed operations affecting the email messages at issue, the messages existed in the random access memory (RAM) or in hard disks, or both, within Interlock computer system.” (Emphasis added).
Stripped of all technical jargon, the sole legal issue presented by this appeal is whether the information contained in this computer system is data that can be “intercepted” within the meaning of the Wiretap Act. The answer to that question is not to be found in the wringing of the proverbial hands or dire warnings of the Doomsday that is predicted to follow one or the other conclusion. Cf. Yvette Joy Liebes-man, The Potential Effects of United States v. Councilman on the Confidentiality of Attorney-Client E-Mail Communications, 18 Geog. J. Legal Ethics 893 (2005). Rather, the answer lies in a dispassionate reading of the legislation[20] upon which the criminal charges are based.
The statute that Councilman is charged with conspiring to violate provides for criminal sanctions against “any person who — (a) intentionally intercepts,[21] endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.” 18 U.S.C. § 2511(1) (emphasis added). The term “electronic communication” is defined as “any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by wire, radio, electromagnetic, photoelectronic or photooptical system.” 18 U.S.C. § 2510(12). In contrast, the term “wire communication” is defined as “any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception ... furnished or operated by any person engaged in providing or operating such facilities ... and such term includes any electronic storage[22] of such communication.” 18 U.S.C. § 2510(1) (emphasis added).
It is Congress’ failure to provide this emphasized language in its definition of “electronic communication” that incites the majority into engaging in what I believe to be an unfortunate act of judicial legislation that no amount of syllogization can camouflage. The lacuna between the definition of “wire communication” and that of “electronic communication” can only be bridged by the body that created it; jurisprudential “body English” does not suffice to fill that vacuum. Although nature abhors a vacuum, it has no power over legislative oversights.
In finding the correct legal answer to the non-existent dilemma which the major *87 ity believes exists, we need go no further than our own In re Hart, in which, apropos of the present circumstances, we stated that, “[w]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” 328 F.3d 45, 49 (1st Cir.2003) (quoting Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002)). Contrary to the majority’s assertions that this expressio unius presumption ought not apply because the language in question was not part of a “new, self-contained statute,” maj. op. at 73, it is actually “made stronger when, as here, Congress has amended a statute to include certain language in some, but not all, provisions of the Statute.” United States v. Steiger, 318 F.3d 1039, 1051 (11th Cir.2003) (construing the Electronic Communications Privacy Act), cert. denied, 538 U.S. 1051, 123 S.Ct. 2120, 155 L.Ed.2d 1095 (2003); see also United States v. Fisher, 6 U.S. (2 Cranch) 358, 399, 2 L.Ed. 304 (1805) (“Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction.”).
These principles are particularly relevant to the interpretation of federal criminal statutes, for “[fjederal crimes are defined by Congress, not the courts,” and thus “policies of strict construction” should guide our actions. Lanier, 520 U.S. at 267 n. 6, 117 S.Ct. 1219.
It is not by coincidence that every court that has passed upon the issue before us has reached a conclusion opposite to that of the en banc majority: that the Wiretap Act’s prohibition on intercepting electronic communications does not apply when they are contained in electronic storage, whether such storage occurs pre-or post-delivery, and even if the storage lasts only a few mili-seconds. See Theofel v. Farey-Jones, 359 F.3d 1066, 1077-78 (9th Cir. 2004) (post-delivery); Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 113-14 (3d Cir.2003) (post-delivery); United States v. Steiger, 318 F.3d 1039, 1048-49 (11th Cir.2003) (on hard drive), cert. denied, 538 U.S. 1051, 123 S.Ct. 2120, 155 L.Ed.2d 1095 (2003); Konop v. Hawaiian Airlines, 302 F.3d 868, 878-79 (9th Cir. 2002) (on website server), cert. denied, 537 U.S. 1193, 123 S.Ct. 1292, 154 L.Ed.2d 1028 (2003); Steve Jackson Games, Inc. v. United States Secret Serv., 36 F.3d 457, 461-62 (5th Cir.1994) (pre-retrieval); see also United States v. Reyes, 922 F.Supp. 818, 836 (S.D.N.Y.1996) (finding no interception where messages were retrieved from pagers’ memories prior to their retrieval by intended recipients because the messages were in “electronic storage”).
Contrary to the en banc majority’s view, our interpretation of the statute does not require that we assume that Congress contemplated the complete evisceration of the privacy protections for e-mail. When considering the intra-computer “interceptions” at issue here, Congress rationally may well have concluded that the public’s privacy rights, or more specifically those between an e-mail service provider and its own customers, could be adequately controlled by normal contract principles rather than by federal statute. Councilman’s “interception” of Interloc customers’ e-mail was not akin to an interception engaged in by an outside party who was unrelated or unknown to the contracting parties. When a customer signs up with an e-mail provider like Interloc, he routinely is asked to read and expressly sign off on a privacy agreement which defines his expectations of privacy vis-á-vis the provider. If the protections are inadequate, he may decline *88 the e-mail service and seek an alternative service contract which will afford him the protections he requires. Neither the Wiretap Act nor its legislative history forecloses the inference that Congress, in its exclusion of “electronic storage” from the definition of “electronic communication,” intended to leave such matters to the exigencies of the contracting parties. If In-terloc did intercept its customers’ messages in breach of a privacy agreement, the remedy lies in contract, not in the Wiretap Act.
I see no point in rummaging through the legislative history of a statute whose language, or more accurately, absence thereof, speaks for itself. “[WJhen the statute’s language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.” Dodd v. United States, — U.S. -, -, 125 S.Ct. 2478, 2483, 162 L.Ed.2d 343 (2005) (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)). This case presents the classic example of “legislative history [which] is itself often murky, ambiguous, and contradictory.” Exxon Mobil Corp. v. Allapattah Servs., Inc., — U.S.-, -, 125 S.Ct. 2611, 2626, 162 L.Ed.2d 502 (2005) (rev’g Rosario Ortega v. Star-Kist Foods, Inc., 370 F.3d 124 (1st Cir.2004)).
Judicial investigation of legislative history has a tendency to become, to borrow Judge Leventhal’s memorable phrase, an exercise in ‘looking over a crowd and picking out your friends.’ ... [Jjudicial reliance on legislative materials like committee reports, which are not themselves subject to the requirements of Article I, may give unrepresentative committee members — or worse yet, unelected staffers and lobbyists' — both the power and incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text.
Id. In any event, I refer to the panel opinion on this point. Councilman, 373 F.3d at 203-04.
I believe that both viewpoints on the first issue before the en banc court have been adequately expressed. Ultimately, it is up to the Supreme Court to determine which is correct, but, in my view the government has attempted to fish with a net that has holes in it and is thus in need of repair.
II.
Unfortunately, the matter does not end here. As demonstrated by the results of previous efforts by this and other courts to grapple with the statute in question, any lingering ambiguity that makes room for the majority’s interpretation certainly qualifies as “grievous,” maj. op. at 81. Due process, therefore, requires that the statute be construed against criminal liability, in accordance with the rule of lenity. See Lanier, 520 U.S. at 266, 117 S.Ct. 1219; Huddleston v. United States, 415 U.S. 814, 831, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974). Even if the ambiguity is not so serious, and “clarity at the requisite level may be supplied by [the majority’s] judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope.” Lanier, 520 U.S. at 266, 117 S.Ct. 1219. Whichever doctrine of “fair warning” one might apply, the bottom line is that the statute and the cases construing it did not make it “reasonably clear at the relevant time that the defendant’s conduct was criminal.” Id. at 267, 117 S.Ct. 1219.
*89 At the time that Councilman allegedly violated the Wiretap Act in 1998, he would have had available the following to guide his conduct: (1) the statute in question, and (2) the Jackson Games case (1994) and, tangentially, the Reyes case (1996). There is little in any of these that would have given Councilman fair notice of the en banc majority’s interpretation, which itself requires reliance on legislative “history” that resembles a Byzantine maze.
Nor did the 1997 law review article cited by the majority render the interpretation adopted today foreseeable. Quite the opposite, in fact. That article examined the decision in Steve Jackson Games, 36 F.3d 457, in which the Fifth Circuit determined that the pre-retrieval seizure of private emails stored on a bulletin board server did not constitute an “intercept” under 18 U.S.C. § 2511(1)(a). White wrote:
Rejecting the appellant’s argument that logically seizure of something before it is received should constitute interception, the Steve Jackson Games court held that the E-mail stored on the [bulletin board’s] computer hard drive was no longer in transmission, and thus could not be intercepted within the meaning of 18 U.S.C. § 2511(1)(a).... The narrowness of the Fifth Circuit’s interpretation of “interception” is important. Following the Fifth Circuit’s rationale, there is only a narrow window during which an E-mail interception may occur — the seconds or mili-seconds before lohich a newly composed message is saved to any temporary location following a send command. Therefore, unless some type of automatic routing software is used (for example, a duplicate of all an employee’s messages are automatically sent to the employee’s boss), interception of E-mail within the prohibition of the ECPA is virtually impossible.
White, supra, at 1082-83 (footnote omitted) (emphasis added). Clearly, the software used by Councilman was not “automatic routing software” that operates “before a newly composed message is saved to any temporary location.” Id. at 1083. White’s article, like other scholarship available at the time, thus would have forcefully suggested that Councilman’s conduct was not prohibited. See Thomas R. Greenberg, E-Mail and Voice Mail: Employee Privacy and the Federal Wiretap Statute, 44 Am. U.L.Rev. 219, 249 (1994) (“Thus, the limitations imposed on employer interceptions of wire and electronic communications vanish once the same communication is in storage. Accordingly, in order to avoid Title III liability, an employer need only access employee communications once they have been stored.”); Ruel Torres Hernández, ECPA and Online Computer Privacy, 41 Fed. Comm. L.J. 17, 39 (1988-1989) (“In other words, there simply is no ECPA violation if the person or entity providing a wire or electronic communication service intentionally examines everything [in storage] on the system, whether or not it is for the purpose of a quality control check.”) (internal quotation marks omitted). Thus, I am at a loss to conceive how Councilman would have had fair notice of the majority’s interpretation at the time of his actions.
Finally, Congress’s provision of a good faith exception for those who divulge intercepted communications because they misconstrued the Wiretap Act’s narrow exceptions to criminal liability as an affirmative defense, see maj. op. at 36-37 (citing 18 U.S.C. § 2520(d)(3)), is irrelevant. Councilman should not have to show he relied on those exceptions to divulge the e-mails he obtained, because he had no “reasonably clear” indication that to do so would otherwise violate the Wiretap Act.
*90 Councilman is being held to a level of knowledge which would not be expected of any of the judges who have dealt with this problem, to say nothing of “men [and women] of common intelligence.” Lanier, 520 U.S. at 266, 117 S.Ct. 1219 (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). If the issue presented be “garden-variety,” maj. op. at 82 (quoting Sabetti v. Dipaolo, 16 F.3d 16, 18 (1st Cir.1994)), this is a garden in need of a weed killer.
For the reasons stated, I respectfully dissent.

. As in the majority’s opinion, statutory references herein are to the pre-2001 version of the Wiretap Act. See maj. op. at 71, n.4.

. The term “intercept” is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.” 18 U.S.C. § 2510(4).

."Electronic storage” is broadly defined as "(A) any temporary, intemediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.” 18 U.S.C. § 2510(17) (emphasis added).